AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of Missouri

OCT 11 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

|  |  |  |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  4:19 MJ 9013 FRB/NAB |
| Precision Location Information; Subscriber & Transactional Records; Cell Site Information; Pen Register & Trap-and-Trace for Phone # (314) 899-3855 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ District of _____ **Kansas** _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | Felon in possession of a firearm |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew Muench, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **10/11/19**

_____
*Judge's signature*

City and state:  St. Louis, MO

Honorable Frederick R. Buckles, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN ) No. 4:19 MJ 9013 FRB/NAB
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION; )
SUBSCRIBER AND TRANSACTIONAL ) **FILED UNDER SEAL**
RECORDS; CELL SITE INFORMATION; )
AND FOR A PEN REGISTER AND TRAP )
AND TRACE DEVICES FOR PHONE )
NUMBER (314) 899-3855. )

## **AFFIDAVIT**

I, Andrew Muench, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone (hereinafter referred to as the "subject cellular telephone") to require SPRINT (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone, as described in Attachment B to the proposed warrant and order.

I am a Special Agent (SA) employed by the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), United States Justice, and have been so employed since January 2018. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Title

1

18, United States Code, Section 2510(7), that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1). My current assignment is with the St. Louis Field Office of the Kansas City Field Division where I investigate violations of federal law pertaining to firearms and violent crimes involving the use of firearms and explosives.

2.     I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I have a Bachelor's of science degree in Criminal Justice and a Bachelor's of science degree in Psychology from the University of Central Missouri. I currently have three credit hours left for the completion of my Masters in Criminal Justice at the University of Central Missouri. In December of 2012 I obtained my Missouri Peace Officer Standards and Training (POST) certificate from the St. Louis County and Municipal Police Academy in St. Louis, Missouri. From December 2012 to November 2017 I was employed as a Police Officer at the University City Police Department. From June 2010 to June 2012 I was employed as a student assistant with the Bureau of Alcohol, Tobacco, Firearms & Explosives in the Kansas City Field Division.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling

2

information, including pen register information, in an effort to locate and monitor the location of the subject cellular telephone.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the subject cellular telephone is currently being used in connection with violations of Title 18, United States Code, Section 922(g)(1) (hereinafter referred to as "the subject offenses"), by Deoman REEVES, and others known and unknown.  There is also probable cause to believe that the location information described in Attachment B to the proposed warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

6.      Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.  For example, when a

3

cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").   When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the

4

cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.       Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.       Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.In order to locate the subject cellular telephone and monitor the movements of the phone, the investigative

5

agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.      Special Agent Andrew Muench of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) briefed with Lieutenant Detectives Brian Isenberg and Shawn Whitley of the City of University City Police Department (UCPD), in reference to a shooting committed by Deoman **REEVES** on September 26, 2019.

8.      On September 26, 2019 officers of the UCPD responded to the area of 7530 Shaftesbury, St. Louis, MO 63130 for a call for shots fired. Officers made contact with witnesses who reported they heard the gun shots, but did not see anyone shooting. Later that day, a neighbor (RM) told UCPD officers he was home at the time of the shooting and heard several gun shots in front of his residence (7423 Shaftesbury). RM said after the shooting he looked outside and saw a black SUV traveling eastbound on Shaftesbury. Several bullet fragments were located inside R.M.'s residence and bullet holes were located through a window and drapes near the front of the residence. An additional witness who wished to remain anonymous was located during a second area canvass. The witness advised he/she was on the front porch of 7519 Shaftesbury at the time

6

of the shooting and observed a black Jeep Cherokee drive west on Shaftesbury from Hanley and approach a blue truck, parked in front of 7530 Shaftesbury. Moments later he/she heard approximately five gunshots. The Jeep then continued westbound on Shaftesbury, towards North & South Road. The blue truck drove eastbound on Shaftesbury toward Hanley. The witness said the shooter in the Jeep was wearing a red hoodie.

9.     On September 26, 2019 at approximately 1045 hours, two victims, Chelsie Buchannon and Anthony Anderson responded to the UCPD to report they had been shot at while driving in the area of 7530 Shaftesbury. They were not injured, but their vehicle sustained bullet holes.

10.    Buchannon and Anderson reported separately to UCPD Detectives that prior to being shot at, they were running errands and were at the Shell gas station near the location of the shooting. At the gas station they observed a subject known to them as Deoman **REEVES**, in the driver's seat of a dark colored Dodge Durango that was parked on the lot of the gas station. A short time later they were driving eastbound in the 7500 block of Shaftesbury and noticed that same vehicle parked on the south side of the street. Buchannon said as they approached the vehicle, she recognized the vehicle as REEVES,' due to the bullet holes along the driver's side that she had seen several times before. As Buchannon and Anderson drove past the vehicle, they heard gun fire. Anderson then returned fire in self-defense. Buchannon and Anderson then drove to Delmar and Highway 1-70 and the blue Durango continued to follow them. They drove south on Highway 1-70 until the Durango was no longer in sight. Buchannon and Anderson both separately identified Deoman **REEVES** in photographic lineups as the subject who shot at them.

11.    Buchannon and Anderson know **REEVES** because of a prior incident approximately one (1) year ago that took place in the City of St. Louis, wherein Deoman **REEVES**

7

utilized the same vehicle and shot at Anderson. The case was dropped because Anderson refused to testify against **REEVES** for the shooting.

12.     While Buchannon was at the station, UCPD Detectives obtained consent to search her vehicle. UCPD Detectives located two (2) bullet holes in the small rear passenger side window and recovered an ammunition slug from the driver's side interior pillar. Inside the vehicle, UCPD Detectives located a black and brown Taurus G2C 9mm handgun with magazines and ammunition (belonging to Anderson). In addition, UCPD Detectives located a spent 9mm shell casing and a red hoodie inside the vehicle.

13.     On September 27, 2019 at approximately 7 p.m., Lt. Isenberg received a telephone call (314-899-3855) from a subject who identified himself as Deoman **REEVES**. Deoman **REEVES** asked Lt. Isenberg several questions, but would not give specific answers to questions Lt. Isenberg asked. Lt. Isenberg informed Deoman **REEVES** he wanted to speak with him in person, but **REEVES** told Lt. Isenberg he was out of town. Lt. Isenberg believed Deoman **REEVES** was only attempting to obtain information related to the shooting, and had no intention of meeting with Lt. Isenberg in person to discuss the matter.

14.     On September 30, 2019, the St. Louis Metropolitan Police Department stopped a blue Dodge Durango with Virginia license plates (UST-2046) at 5745 Delmar, St. Louis, MO in reference to the Assault 1st wanted attached to the license plate. The wanted had been entered in relation to the shooting from September 26, 2019. A small child and Jelani Reeves, cousin of Deoman **REEVES** were occupying the vehicle at the time. During a search of the vehicle, officers located a black colored Smith and Wesson, Model M&P, 40. Caliber pistol with serial number HMN3176, in the center console. Officers located bullet holes in the vehicle's driver's door,

8

driver's seat and rear passenger door, consistent with the description of **REEVES'** vehicle by victim Buchannon.

15.     During an interview, Jelani Reeves told UCPD Detectives that on September 27, 2019 he contacted Deoman **REEVES'** girlfriend, Candice Walker, and met her that day to borrow **REEVES'** Dodge Durango. Jelani Reeves said he had been driving the car and noticed the bullet holes when he got the vehicle from Walker. Jelani Reeves claimed ownership of the aforementioned firearm and said he purchased it on September 7th from Kevin's Guns in St. Charles, MO.

16.     Lt. Isenberg has confirmed that the most recent cell phone number utilized by Deoman **REEVES** is **(314) 899-3855, the subject cellular telephone.** Public records checks were performed on **(314) 899-3855** and the provider was identified as SPRINT.

17.     Search of law enforcement data bases confirms that **REEVES** is a convicted felon, having been convicted of the following offenses which carry in excess of one year imprisonment: Assault Second Degree, Armed Criminal Action, Unlawful Use of a Weapon, and Unlawful Possession of a Firearm.

18.     In furtherance of the investigation, your affiant conducted law enforcement, commercial, and open source database inquiries for information concerning Deoman **REEVES'** whereabouts. As part of open source inquiries, your affiant conducted searches of Crime Matrix and Facebook social networking websites looking for profiles and information on Deoman **REEVES**. As a part of those searches, your affiant identified and determined that the **subject cellular telephone**, with phone number **(314) 899-3855** has been utilized on several occasions by Deoman **REEVES**. Several inquiries through Crime-Matrix, Accurint, and Facebook and various law enforcement database inquires show Deoman **REEVES** using this number as his primary

9

number as recently as September 18, 2019. This number is being used as **REEVES'** primary contact number. Your affiant believes that monitoring and tracking the subject **cellular telephone,** with phone number **(314) 899-3855,** would be the most expedient method to locate **REEVES.** The monitoring of cellular data, as well as the activation of precision location information, will permit investigators to ascertain who **REEVES** is communicating with, as well as determine **REEVES'** whereabouts. This information is believed to be the most efficacious in locating **REEVES.**

19.     Based on your affiants training and experience, I know that criminals involved in shootings and who carry firearms, utilize cellular telephones before, during, and after violent engagements, in order to communicate and plan their activities. The prospective information sought in this warrant will allow investigators to determine the general movements and contacts that Deoman **REEVES** makes and assist in locating evidence of violations of law.

20.     The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 18, United States Code, Section 922(g)(1) (the subject offense). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of any co-conspirators and the seizure of evidence. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## CONCLUSION

21.     Based on the above information, your affiant submits that there is probable cause to believe that the subject cellular telephone is currently being used in connection with the commission of the subject offenses, by Deoman REEVES, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B to the

10

proposed warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

22.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.     Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the subject cellular telephone by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

10/11/19
DATE

ANDREW MUENCH
Special Agent - ATF

Sworn to and subscribed before me this 11th day of October, 2019.

FREDERICK R. BUCKLES
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

11

## **ATTACHMENT A**

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &

B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a

Warrant and Order requiring a telecommunications service provider reflected in Part II of this

Attachment A, to disclose the records and other information concerning the account described in

Part I of this Attachment A.

**I.     The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---------------|----------------------|-----------------|-------------------------------------|
| SPRINT | (314) 899-3855 <br><br> (the subject cellular telephone) | | DEOMAN REEVES |

**II.    The Provider**

Records and information associated with the subject cellular telephone that is within the

possession, custody, or control of SPRINT, and other applicable service providers reflected on the

list contained in this Attachment A, including information about the location of the subject cellular

telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

01 Communications
Access Line Communication
ACN, Inc.
ACS
Aero Communications, Inc. (IL)
Afford A Phone
Airvoice Wireless
Alaska Communications
Alhambra-Grantfx Telephone
Altice USA
AmeriTel
AOL Corp.
Arch Communication
AT&T
AT&T Mobility
Bell Aliant
Big River Telephone
Birch Telecom
Blackberry Corporation
Brivia Communications
Broadview Networks
Broadvox Ltd.
Budget Prepay
Bulls Eye Telecom
Call Wave
Cbeyond Inc.
CCPR Services
Cellco Partnership,
  d/b/a Verizon Wireless
Cellular One
Cellular South
Centennial Communications
CenturyLink
Charter Communications
Chickasaw Telephone
Choctaw Telephone Company
Cimco Comm
Cincinnati Bell
Cinergy Communications
Clear World Communication
Com-Cast Cable Comm.
Commercial Communications
Consolidated Communications
Cox Communications
Cricket Wireless
Custer Telephone Cooperative
DBS Communications
Delta Communications
Detroit Cellular
Dobson Cellular

Egyptian Telephone
Electric Lightwave, Inc.
Empire Paging
Ernest Communications
EZ Talk Communications
FDN Communications
Fibernit Comm
Florida Cell Service
Florida Digital Network
Focal Communications
Frontier Communications
FuzeBox, Inc.
Gabriel Comm
Galaxy Paging
Global Communications
Global Eyes Communications
Global Naps
Grafton Telephone Company
Grand River
Grande Comm
Great Plains Telephone
Harrisonville Telephone Co.
Heartland Communications
Hickory Telephone
Huxley Communications
iBasis
IDT Corporation
Illinois Valley Cellular
Insight Phone
Integra
Iowa Wireless
IQ Telecom
J2 Global Communications
Leap Wireless International
Level 3 Communications
Locus Communications
Logix Communications
Longlines Wireless
Los Angeles Cellular
Lunar Wireless
Madison River
  Communications
Madison/Macoupin Telephone
  Company
Mankato Citizens Telephone
Map Mobile Comm
Marathon Comm
Mark Twain Rural
Max-Tel Communications
Metro PCS
Metro Teleconnect

Mid-Atlantic
Midvale Telephone Exchange
Mobile Communications
Mound Bayou Telephone Co.
Mpower Communications
Navigator
  Telecommunications
NE Nebraska Telephone
Netlink Comm
Network Services
Neustar
Neutral Tandem
Nex-Tech Wireless
Nexus Communications
NII Comm
North Central Telephone
North State Comm
Northcoast Communications
Novacom
Ntera
NTS Communications
Oklahoma City SMSA
ONE Communications
ONSTAR
Optel Texas Telecom
Orion Electronics
PacBell
PacWest Telecom
PAETEC Communications
Page Plus Communications
Page Mart, Inc.
Page Net Paging
Panhandle Telephone
Peerless Network
Pineland Telephone
PhoneTech
PhoneTel
Preferred Telephone
Priority Communications
Puretalk
RCN Telecom
RNK Telecom
QWEST Communications
Sage Telecom
Seren Innovations
Shentel
Sigecom LLC
Sky Tel Paging
Smart Beep Paging
Smart City Telecom

Socket Telecom
Spectrum
Sprint
SRT Wireless
Star Telephone Company
Start Wireless
Sugar Land Telephone
Sure West Telephone Company
Talk America
Tele Touch Comm
Telecorp Comm
Telepak
Telispire PCS
Telnet Worldwide
Tex-Link Comm
Time Warner Cable
T-Mobile
Total Call International
Tracfone Wireless
Trinity International
U-Mobile
United Telephone of MO
United Wireless
US Cellular
US Communications
US LEC
US Link
US West Communications
USA Mobility
VarTec Telecommunications
Verisign
Verizon Telephone Company
Verizon Wireless
Viaero Wireless
Virgin Mobile
Vonage Holdings
Wabash Telephone
Wave2Wave Communications
Weblink Wireless
Western Wireless
Westlink Communications
WhatsApp
Windstream Communications
Wirefly
XFinity
XO Communications
Xspedius
Yakdin Valley Telephone
YMAX Communications
Ztel Communications [1]

[1] Last Update: 09/27/2019

2

## ATTACHMENT B

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

## I.  PRECISION LOCATION INFORMATION

### A.  Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from October 11, 2019, to November 24, 2019, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

### B.  Information to Be Seized by the United States

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 involving Deoman REEVES.

1

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

### Information to be Disclosed by the Provider

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI") numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

2

6. Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7. Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a) call detail information (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b) cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c) numbers dialed;

(d) call duration;

(e) incoming numbers if identified;

(f) signaling information pertaining to that number;

(g) a listing of all control channels and their corresponding cell sites;

(h) an engineering map showing all cell site tower locations, sectors and orientations;

3

(i)     subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(j)     historical location estimates, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD); and,

(k)     Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

4

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.  IP addresses of any websites or other servers to which the subject cellular telephone connected;

d.  Source and destination telephone numbers and email addresses;

e.  "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.   The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.   The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including

enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.      Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.      Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber

6

or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.